BANKERS' LIFE CO. *v.* MILLER.

1. INSURANCE—LIFE INSURANCE—RIGHT TO PROCEEDS OF POLICY—
   FAILURE TO CLAIM.
   In a suit by bill of interpleader by a life insurance company to determine the right to the proceeds of a life insurance policy, where the attorney in fact of the beneficiary had assigned the proceeds of said policy to a third person, the failure of said assignee, while on the stand as a witness, to make any claim to said fund, justified the court in finding that he had none.

2. SAME—BENEFICIARIES — POWER OF ATTORNEY — ASSIGNMENTS —
   VALIDITY.
   A power of attorney to collect the proceeds of a life insurance policy, executed by the beneficiary, which was in effect an assignment and was an attempt to do by indirection what the statute of the State and the by-laws of the company prohibited, will be declared to be void by a court of equity, which looks beyond the form to the substance.

3. SAME—PRINCIPAL AND AGENT—POWER OF ATTORNEY.
   Even if said power of attorney be held valid, the attorney in fact could not benefit thereby, since he was only authorized to collect said insurance as attorney in fact of the beneficiary, and would be obliged to turn it over to her.

Appeal from Kent; McDonald (John S.), J. Submitted April 18, 1922. (Docket No. 73.) Decided June 17, 1922.

Bill of interpleader by the Bankers' Life Company against Mary E. Miller, Earl Anderson, and Manley C. Seymour to determine the title to the proceeds of a policy of insurance. From a decree for defendant Miller, defendants Anderson and Seymour appeal. Affirmed.

219—Mich.—11.

*F. E. Wetmore,* for appellants.

*C. Sophus Johnson* and *M. Thomas Ward,* for appellee.

The plaintiff is an assessment life insurance association organized under the laws of the State of Iowa and authorized to transact business in this State. The Iowa statute under which plaintiff is organized contains the following provision:

"Insurable age—beneficiary—assignment of policy. No association organized or operating under this chapter shall issue a certificate of membership to any person under fifteen nor over sixty-five years of age, nor unless the beneficiary named in the certificate is the husband, wife, relative, legal representative, heir, creditor or legatee of the insured member, nor shall any such certificate be assigned. Any certificate issued or assignment made in violation of this section shall be void. The beneficiary named in the certificate may be changed at any time at the pleasure of the assured, as may be provided for in the articles or by-laws, but no certificate issued for the benefit of a wife or children shall be thus changed so as to become payable to the creditors." Code of Iowa, 1897, § 1789.

Section 2, article 2, of plaintiff's by-laws provides:

"Any member may, with the consent of the association, make a change in the beneficiary in his certificate, without requiring the consent of such beneficiary. The change shall be made by indorsement on the certificate, a duplicate of which indorsement shall be furnished to the home office, and shall not be binding until the consent of the association shall be indorsed thereon. No change shall be consented to unless the new beneficiary shall be the wife, relative, legal representative, heir, legatee of the member, except that if the certificate was issued for the benefit of others than the wife and children of the member, it may be changed so as to be payable to creditors."

On November 1, 1905, plaintiff issued a membership

certificate for $2,000 to Joseph Henry Miller, in which certificate Mary E. Miller, wife of Joseph Henry Miller, was named as beneficiary. Mr. Miller died August 2, 1920. Defendants claimed adversely the amount due on the certificate and this bill of interpleader was filed and the money paid into court by stipulation of the parties.

Upon the hearing of the case it appeared from the testimony that on and prior to October 20, 1914, Mr. Miller and his wife, as tenants by the entirety, owned a 40-acre farm in Denver township, Newaygo county. There were mortgages on it aggregating $800. It is alleged that it was worth at that time $1,800. Defendant Seymour testifies that the Millers were then down and out and were then about 60 years old. On this date Mr. and Mrs. Miller and defendant Seymour went to a lawyer's office in Newaygo county and there had certain papers executed. It should be stated at this point that Mr. Seymour had before this meeting, in answer to a letter written by him to plaintiff, been advised by the plaintiff that the certificate or policy of insurance could not be assigned to him. The papers this day executed consisted of a deed from the Millers to Seymour of the 40-acre farm, a life lease back to them of the farm, an agreement between them that Seymour should pay the mortgages on the farm, the assessments on the life insurance and insurance on the buildings, give the Millers the use of the farm during their life, pay their burial expenses, erect a monument at their graves at a cost not to exceed $200, or if Mrs. Miller survived her husband and so elected, to pay her $150 out of the insurance money; another paper, a power of attorney, was also executed this day by Mr. and Mrs. Miller constituting Mr. Seymour their attorney in fact to pay the premiums and collect the amount due on the policy on the death of Mr. Miller. After these papers were exe-

cuted, the Millers continued to live on the farm about
five years when they moved to Grand Rapids.   Sey-
mour paid them $200 for a quitclaim deed of the farm,
he paid the assessments amounting to about $200 and
the taxes of about $252.   It would appear that he
paid the mortgages.   He traded the farm, receiving
$2,200 for it.   He did not pay Mr. Miller's burial
expenses, nor those of Mrs. Miller, who died before
the hearing, nor did he erect the monument although
on the hearing he claimed to be willing to do so.
Shortly after the death of Miller, defendant Seymour
in the name of Mrs. Miller and as her attorney in fact
executed an assignment of her interest in the certifi-
cate of insurance to defendant Anderson.   Seymour
claims to have borrowed money of Anderson on this
assignment, but Anderson, although called as a wit-
ness, makes no such claim.   The trial judge entered
a decree in favor of the estate of Mrs. Miller, and
defendants Seymour and Anderson appeal.

FELLOWS, C. J. (*after stating the facts*).   We are
satisfied that defendant Anderson has no actual in-
terest in this fund.   Having failed while on the stand
to swear that he had any interest, he cannot complain
if this court declines to find that he has one.   Al-
though Mr. Seymour claims to have borrowed money
on the assignment, it is difficult to understand how
money would be lent to Seymour on an assignment
which he executed as attorney in fact for another
party.   Anderson's interest is but a paper one and we
shall treat the case as one between Seymour and the
estate of Mrs. Miller.

On behalf of Mrs. Miller's estate it is insisted that
what was done operated as an assignment of the cer-
tificate, and that this was in conflict with the law
under which the company was organized as well as in
conflict with its by-laws and therefore void.   On
behalf of Mr. Seymour it is insisted that the papers

executed on October 20, 1914, coupled with his full
performance of all his agreements during the life-
time of Mr. Miller and his willingness to perform those
accruing after his death operates to give him this
fund.   We are satisfied that the transaction here in-
volved was an attempt to do by indirection what the
statute of Iowa and the by-laws of the company pro-
hibited, and that looking beyond the form to the sub-
stance as a court of equity may do we should find that
this was an assignment of the certificate inhibited
by both the State and the by-laws and therefore void.
Before these parties went to the lawyer's office to
have the papers drawn Mr. Seymour had been advised
by the company that an assignment of the certificate to
him would be void.   He was no kin of Mr. Miller,
was not his creditor, had no insurable interest in his
life, and the statute and by-laws were called to his
attention, and the fact that a change of beneficiary
from the widow would be void was definitely stated
to him in the letter written by the company.   So
there was no written assignment of the certificate to
Seymour executed that day but a power of attorney
was given him authorizing him to collect on the cer-
tificate and the certificate was turned over to him.
We think what was done was an assignment.   Indeed,
it is difficult to comprehend what interest Mr. Sey-
mour has in this fund unless it is by virtue of an
assignment.   As we have stated, Mr. Seymour had no
insurable interest in the life of Miller and was not
made beneficiary in the policy.

The supreme court of Iowa has had occasion to pass
upon this statute.   In the case of *Crocker* v. *Hogin,*
103 Iowa, 243 (72 N. W. 411), a certificate had been
assigned by the husband and wife, both joining in the
assignment.   The court held the assignment void
under the statute and decreed the fund to the widow.
Speaking of the statute, the court said:

"The general assembly enacted the prohibition we are considering for the purpose of preserving to the designated beneficiaries the benefits to be derived from insurance in such associations, and not only limited the persons who might profit by membership therein, but expressly prohibited assignments of the certificates. It is not important to consider the reasons which led to, nor the policy of, such legislation. That it exists, and renders void all such assignments as are relied upon by appellee is plain, and our duty to enforce it is equally clear."

Nor can we see how defendant Seymour could be benefited if we took up each paper separately and considered it disconnected from the other papers or the surrounding circumstances. The only paper giving him any right to collect the insurance is the power of attorney. By this instrument Mrs. Miller constituted him her attorney in fact to collect the insurance. By it he was not authorized to collect it for himself, but as her attorney in fact, for her. If he had collected it as her attorney in fact he would be obliged to turn it over to her. Manifestly this instrument alone gave him no right to collect this fund and appropriate it to his own use. Nor are we persuaded that there is any inequity in this fund going to the widow. Defendant Seymour has already profited to the amount of several hundred dollars by his dealings with the Millers. Under no aspect of the case is he entitled as matter of law or equity to profit further.

The decree will be affirmed. The estate of Mrs. Miller will recover costs of both courts of defendants Seymour and Anderson.

Wiest, Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred. McDonald, J., did not sit.